# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| STANLEY THOMAS BRAZIL, Jr., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 17-cv-1420 |
| ) | |
| STEVE KALLIS, Warden ) | |
| ) | |
| Respondent. ) | |

## ORDER AND OPINION

Now before the Court is Petitioner Stanley Thomas Brazil Jr.'s (hereinafter "Petitioner" or "Brazil") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1)[1] and Amended Petition (Doc. 3) (collectively referred to as the § 2241 Petition). Also before the Court are Petitioner's Motions to Amend his Petition (Docs. 16, 18, and 23) and Motion to Take Judicial Notice (Doc. 21). For the reasons set forth below, the § 2241 Petition (Docs. 1 and 3) is DENIED. Petitioner's Motions to Amend and Motion to Take Judicial Notice (Docs. 16, 18, 21, and 23) are DENIED as futile.

### I.    BACKGROUND

On September 16, 2008, a jury in the United States District Court for the Eastern District of Michigan convicted Brazil of two counts of distributing and aiding and abetting another in distributing fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. *See United States v. Brazil*, No. 1:07CR20531 (E.D. Mich.); Resp. App., PSR at ¶¶ 3, 4, and 11 (Doc. 13). Prior to the jury trial, the Government had filed a Notice pursuant to

---

[1] Citations to documents filed in this case are styled as "Doc. __."

21 U.S.C. § 851(a), alleging that Brazil had a 1998 conviction in Saginaw, Michigan, of possessing less than 25 grams of cocaine, in violation of M.C.L. § 333.7403(2)(a)(v). Resp. App. at 28, 21 U.S.C. § 851 Notice (Doc. 11-1). Because the trial court found that this prior conviction qualified as a felony drug offense under the 21 U.S.C. § 841(b)(1)(A) enhancement, as defined under 21 U.S.C. § 802(44), Brazil's statutory mandatory minimum sentence became 20 years. Without this finding, his mandatory minimum at the time would have been 10 years. *See* 21 U.S.C. § 841(b)(1)(A). Either way, his maximum sentence was life. *Id.* Brazil's presentence report determined he had a total offense level of 40 and a criminal history category of III, which resulted in an advisory guidelines range of 360 months to life. *See* Resp. App., PSR at ¶ 81 (Doc. 13).

In January 2009, the sentencing court sentenced Brazil to 380 months' imprisonment on each count, to be served concurrently. The United States Court of Appeals for the Sixth Circuit affirmed Brazil's conviction and sentence. *United States v. Brazil*, 395 Fed. App'x 205 (6th Cir. 2010). Brazil then brought a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody. The district court rejected most of Brazil's claims in October 2013. *Brazil v. United States*, Case No. 07-20531, 2013 WL 5476249 (E.D. Mich. Oct. 1, 2013). The two remaining claims were rejected in separate orders in June 2014 and February 2015. *Brazil v. United States,* No. 07-20531, 2014 WL 2922369 (E.D. Mich. June 27, 2014); *Brazil v. United States,* No. 07-20531, 2015 WL 477186 (E.D. Mich. Fed. 5, 2015). On August 11, 2017, the sentencing court reduced his sentence to 292 months pursuant to a retroactive amendment to the sentencing guidelines. *See* Resp. App. at 123, Amended Judgment (Doc. 11-1).

On September 18, 2017, Brazil filed this Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Brazil argues that, in light of *Mathis v. United States,* 136 S.Ct. 2243 (2016), his 1998 predicate offense in Michigan in violation of M.C.L. § 333.7403(2)(a)(v) does not constitute a felony drug offense for the purposes of the sentencing enhancement under 21 U.S.C. § 841(b)(1)(A), as defined in 21 U.S.C. § 802(44). Therefore, he argues, his mandatory minimum sentence should have been ten years and not twenty. The Government has filed its response and Petitioner filed a reply. This Order follows.

## II. LEGAL STANDARD

Generally, federal prisoners who seek to collaterally attack their conviction or sentence must proceed by way of motion under 28 U.S.C. § 2255, the so-called "federal prisoner's substitute for habeas corpus." *Camacho v. English*, 16-3509, 2017 WL 4330368, at *1 (7th Cir. Aug. 22, 2017) (*quoting Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). The exception to this rule is found in § 2255 itself: a federal prisoner may petition under § 2241 if the remedy under § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Under the "escape hatch" of § 2255(e), "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). Thus, the Seventh Circuit has held that "alternative relief under § 2241 is available only in limited circumstances: specifically, only upon showing "(1) that he relies on 'not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion,' (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is 'grave enough . . . to be

deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding,' such as one resulting in 'a conviction for a crime of which he was innocent.'" *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016), *cert. denied sub nom. Montana v. Werlich*, 137 S. Ct. 1813, 197 L. Ed. 2d 758 (2017) (*citing Brown*, 696 F.3d at 640).

The "second condition has two components: retroactivity and prior unavailability of the challenge." *Montana,* 829 F.3d at 784. And this "second prong" of the "second condition" "is satisfied if '[i]t would have been futile' to raise a claim in the petitioner's original 'section 2255 motion, as the law was squarely against him.'" *Id.* (*citing Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc)).

### III. DISCUSSSION

Brazil argues that, in light of *Mathis v. United States,* 136 S.Ct. 2243 (2016), the use of his predicate conviction under the Michigan statute M.C.L. § 333.7403(2)(a)(v) to enhance his sentence under 21 U.S.C. § 841(b)(1)(A) was improper. *Mathis* addressed whether a statute is divisible for the purposes of the categorical approach, and held that Iowa's burglary statute did not qualify as a predicate violent felony under the Armed Career Criminal Act because it applied to a broader scope of locations than generic burglary. 136 S. Ct. at 2250-51. Respondent argues that Brazil's claim cannot proceed because he has not shown it meets any of the requirements of the test to determine if § 2255 was "inadequate or ineffective to test the legality of his detention." Because the Court agrees that Brazil has not shown his claim was previously unavailable and has not shown he is suffering a miscarriage of justice, the Court dismisses Brazil's claim pursuant to § 2255(e).

**A. District Courts in the Seventh Circuit Are Divided on *Mathis'* Retroactivity.**

The parties do not dispute that *Mathis* is a case of statutory interpretation. However, whether *Mathis* is a new and retroactive case is not as clear. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original). The Seventh Circuit has not directly addressed the issue of whether *Mathis* announced a new rule that applies retroactively, and district courts in the Seventh Circuit are split on the issue. *Compare, e.g., Pulliam v. Krueger,* No. 16-cv-1379-JES, 2017 WL 104184 (C.D. Ill. Jan. 10, 2017) (finding that *Mathis* was new and retroactive for purposes of meeting the § 2255(e) savings clause); *Wadlington v. Werlich*, No. 17–CV–449, 2017 WL 3055039, at *3 (S.D. Ill. July 17, 2017) (same); *Winters v. Krueger*, No. 217CV00386, 2018 WL 2445554, at *2 (S.D. Ind. May 31, 2018) (same); *with Neff v. Williams*, No. 16–CV–749, 2017 WL 3575255, at *2 (W.D. Wis. Aug. 17, 2017) (*Mathis* "merely reaffirmed its 1990 holding in *Taylor*"); *Robinson v. Krueger*, No. 1:17–CV–01187-JBM, 2017 WL 2407253, at *5 (C.D. Ill. June 2, 2017) (same). The Court declines to reach this issue here because, assuming *arguendo* that *Mathis* is a new retroactive case, Brazil is still not entitled to relief because he has not shown his claim otherwise meets the test to determine if § 2255 was "inadequate or ineffective to test the legality of his detention."

**B. Brazil Has Not Shown His Claim Was "Previously Unavailable."**

Brazil has failed to show that his claim was "previously unavailable" to him—the second prong of the test to determine if § 2255 was "inadequate or ineffective to test the legality of his detention." A claim is previously unavailable "if '[i]t would have been futile' to raise a claim in the petitioner's original "section 2255 motion, as the law was squarely against him." *Montana,* 829 F.3d at 784 (*citing Webster*, 784 F.3d at 1136). *See also, Morales v. Bezy*, 499 F.3d 668,

672 (7th Cir. 2007) ("Only if the position is foreclosed (as distinct from not being supported by—from being, in other words, novel) by precedent . . ." can a petitioner satisfy the second prong of the test); *Ojeda v. Williams*, 734 F. App'x 370, 372 (7th Cir. 2018) (denying petitioner's *Mathis*-based § 2241 petition because "as a formal matter" the petitioner's *Mathis*-type argument "could have been raised on direct appeal or in a § 2255 motion within one year of [petitioner's] 2002 sentence").

Brazil argues that his claim was not available because in the Sixth Circuit a "felony drug offense" had been interpreted to include *any* felony drug offense under state law in *United States v. Spikes,* 158 F.3d 913 (6th Cir. 1998). However, the issues in *Spikes* were not as broad as Brazil contends. The defendant in *Spikes* first argued his predicate conviction for attempted aggravated drug trafficking in Ohio was not a felony drug offense under § 841(b)(1) because it did not require the government to prove that he had the specific intent to commit an underlying drug offense. *Id.* at 931. The Sixth Circuit rejected this interpretation of the Ohio statute, finding it did require "the specific intent to engage in the underlying substantive offense." *Id.* at 932. Next, the defendant argued that his conviction for felony drug abuse was not a felony drug offense because he criminalized "mere" drug possession, as opposed to manufacture or distribution of drugs. *Id.* The Sixth Circuit rejected this argument as well, holding that felony drug offenses encompass "drug offenses that involve the simple possession of drugs." *Id.* Neither issue related to the issues in *Mathis* concerning the application of the categorical approach on divisible statutes, nor did *Mathis* serve to overrule *Spikes*. After *Spikes,* Brazil was still free to argue that the categorical approach applied and that the state statute of his conviction was overbroad. Brazil, therefore, has not shown that his current *Mathis*-type claim was unavailable to him in his direct appeal or § 2255 motion, and fails to satisfy the second condition

of the test to determine if § 2255 was "inadequate or ineffective to test the legality of his detention."

**C. Brazil Has Not Shown That There Was a Miscarriage of Justice.**

Additionally, Brazil's claim must be dismissed because his predicate conviction still constitutes a felony drug offense, even in light of *Mathis*. As an initial matter, it is not clear whether the Court must apply the substantive law of the Seventh Circuit—the circuit of Brazil's confinement—or the Sixth Circuit—the circuit of Brazil's conviction. *See, e.g., Shepard v. Krueger*, 911 F.3d 861, 863 (7th Cir. 2018) (noting that the parties had briefed the issue of which circuit's law applied, but bypassing the procedural issue as the Seventh Circuit agreed with the circuit of conviction's previous conclusion). However, under either circuits' law, Brazil's predicate offense is still a felony drug offense after *Mathis*. The Sixth Circuit does not apply the categorical approach to determine whether a state conviction qualifies as a felony drug offense under § 841(b)(1(A) and has held that *Mathis* is "inapplicable to sentences enhanced under § 841(b)(1)(A)." *Smith v. Ormond*, No. 18-5101, 2018 WL 7143637, at *2 (6th Cir. July 30, 2018). Accordingly, under Sixth Circuit law, Brazil's claim fails as the categorical approach of *Mathis* does not apply.

The Seventh Circuit, however, has recently instructed that courts should use the categorical approach to determine whether a state law drug conviction is a "felony drug offense" as defined under § 802(44). *United States v. Elder*, 900 F.3d 491, 501 (7th Cir. 2018). Under the categorical approach, courts look to: "whether the state conviction can serve as a predicate offense by comparing the elements of the state statute of conviction to the elements of the federal recidivism statute." *Elder,* 900 F.3d at 501 (*citing Mathis v. United States*, 136 S.Ct. 2243, 2248–49 (2016)). "If state law defines the offense more broadly than the [federal statute], the

prior conviction doesn't qualify as a [predicate offense], even if the defendant's *conduct* satisfies all of the elements of the [federal] offense." *Id.* (*citing United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016)). If a state statute is overbroad, courts may use the modified categorical approach if the statute is divisible to consult certain documents to see which alternative formed the basis of the defendant's conviction. *See Descamps v. United States*, 570 U.S. 254, 257, 133 S. Ct. 2276, 2281, (2013). To determine whether a statute is divisible, courts look to see if there is "a decision by the state supreme court authoritatively construing the relevant statute and establishing which facts are elements and which are means . . . Absent a controlling state-court decision, the text and structure of the statute itself may provide the answer. Finally, failing those 'authoritative sources of state law,' sentencing courts may look to 'the record of a prior conviction itself' for the limited purpose of distinguishing between elements and means." *Elder*, 900 F.3d at 502 (*citing Edwards*, 836 F.3d at 836) (internal citations omitted).

Here, Brazil was convicted of possessing less than 25 grams of cocaine, in violation of Michigan statute M.C.L. § 333.7403(2)(a)(v). Under M.C.L. § 333.7403(1), it is unlawful to "knowingly or intentionally possess a controlled substance, a controlled substance analogue, or an official prescription form or a prescription form unless . . . [it] was obtained directly from, or pursuant to, a valid prescription. . . ." *Id.* Section 7403(2) next divides the offense and provides differing penalties. Brazil was convicted under § 7403(2)(a)(v), which provided "A person who violates this section as to . . . [a] controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in 7214(a)(iv), and . . . [w]hich is in an amount less than 25 grams of any mixture containing that substance is guilty of a felony punishable by imprisonment for not more than 4 years." *Id.* Section 7214(a)(iv), in turn, included:

> Coca leaves and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, except that the

substances do not include decocainized coca leaves or extraction of coca leaves which extractions do not contain cocaine or ecgonine. The substances include cocaine, its salts, stereoisomers, and salts of stereoisomers when the existence of the salts, stereoisomers, and salts of stereoisomers is possible within the specific chemical designation.

*Id.*

A felony drug offense for the purpose of the § 841(b)(1)(A) enhancement is defined at 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." "Narcotic drugs" are further defined in § 802(17):

> The term "narcotic drug" means any of the following whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:
>
> (A) Opium, opiates, derivatives of opium and opiates, including their isomers, esters, ethers, salts, and salts of isomers, esters, and ethers, whenever the existence of such isomers, esters, ethers, and salts is possible within the specific chemical designation. Such term does not include the isoquinoline alkaloids of opium.
>
> (B) Poppy straw and concentrate of poppy straw.
>
> (C) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed.
>
> (D) Cocaine, its salts, optical and geometric isomers, and salts of isomers.
>
> (E) Ecgonine, its derivatives, their salts, isomers, and salts of isomer.
>
> (F) Any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subparagraphs (A) through (E).

21 U.S.C. § 802(17).

Brazil argues that the Michigan statute is overbroad because there are substances criminalized under M.C.L. § 333.7403 that do not fall within the federal definition, and because

M.C.L. § 333.7403 includes prescription forms. Doc. 1 at 10-12. However, as Respondent argues, the statute is divisible among the subsections of § 7403(2), as each subsection describes a separate crime with a separate punishment. *See Mathis*, 136 S. Ct. 2256–57. Since briefing in this case, the Sixth Circuit has expressly held that the identically structured and similarly worded Michigan statute for manufacture and delivery of controlled substances, M.C.L. § 333.7401, *is* divisible by drug type. *See United States v. Tibbs*, 685 F. App'x 456, 463 (6th Cir.), *cert. denied,* 138 S. Ct. 209, 199 L. Ed. 2d 137 (2017) (holding that M.C.L. § 333.7401 "set forth separate offenses and not alternative means of committing the same offense"). Brazil argues that *People v. Zion,* 93 Mich. App. 576, 578 (1979), mandates a different result. However, *Zion* dealt with an older version of the statute and merely held that the drug type need not necessarily be admitted at the plea hearing where it was clear that the defendant knew he was delivering a controlled substance and "[a]n inculpatory inference that the defendant knew the substance to be heroin could reasonably be drawn by a judge or jury from the facts admitted by the defendant." *Id.* Moreover, Michigan courts have repeatedly found that dug type *is* an element of both M.C.L. § 333.7401 and M.C.L. § 333.7403. *See Tibbs*, 685 F. App'x at 463 (collecting cases). Seeing no reason to disagree with the Sixth Circuit's well-reasoned conclusion, the Court finds that M.C.L. § 333.7403 is divisible by drug type under the § 7403(2) subsections.

Here, Brazil was convicted under § 7403(2)(a)(v), which did not include prescription forms, and only references narcotics listed in schedule 1 or 2 or M.C.L. § 333.7214(a)(iv). Brazil's § 2241 Petition did not specify any substances in these sections that fell outside of the definition of narcotics in § 802(44), as further defined in § 802(17). In his Reply brief, Brazil raised additional arguments that the Michigan law is overbroad because it includes stereoisomers and position isomers. However, Brazil has misread the statutes and misinterpreted the

terminology. First, while § 802(17) does not include position isomers of cocaine in its definition, nothing in the language of the Michigan statute suggests that position isomers of cocaine are included in within the list of controlled substances for that statute either. *See* M.C.L. § 333.7214(a)(iv). Second, while it is true that the Michigan statute, M.C.L. § 333.7214(a)(iv), includes "stereoisomers" of cocaine, whereas the § 802(17) includes "geometric" and "optical" isomers of cocaine, "geometric" and "optical" isomers are the two sub-types of "stereoisomers." *See, e.g., Stereoisomers*, Chemicool.com, https://www.chemicool.com/definition/stereoisomers.html (last visited Feb. 19, 2019) ("Stereoisomers can be subdivided into optical isomers and geometric isomers"); *United States v. Phifer*, 909 F.3d 372, 377 (11th Cir. 2018) ("Optical and geometric isomers, which are mentioned in the DEA's definition of "isomer," are sub-types of stereoisomers."). Accordingly, despite the difference in terminology, the Court finds that the statutes cover the same isomers.

Finally, Brazil argues that the Michigan statute is overbroad because it "has been interpreted to cover the sharing of controlled substances." Doc. 3 at 3 (*citing People v. Schultz*, 246 Mich. App. 695, 635 N.W.2d 491 (2001)). Brazil has not explained why sharing would be insufficient to qualify as a felony drug offense. Moreover, *Schultz* concerned the Michigan statute that criminalized manufacture and delivery of a controlled substance, M.C.L. § 333.7401, not the statute for possession of a controlled substance under which Brazil was convicted, M.C.L. § 333.7403. And, "possession" is sufficient to qualify as a felony drug offense as defined under § 802(44). *See also United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998) ("[Section 802(44)] encompasses drug offenses that involve the simple possession of drugs."). In sum, even after *Mathis*, and even assuming the Court should apply the substantive law of the Seventh Circuit to Brazil's claim, his predicate conviction under M.C.L. § 333.7403(2)(a)(iv) is a

felony drug offense. Accordingly, there has been no miscarriage of justice and, pursuant to § 2255(e), his claim must be dismissed.

The Court notes that Respondent also argues that Brazil cannot show a miscarriage of justice because his predicate conviction actually involved cocaine and because the increased mandatory minimum had no impact on his sentence. Doc. 11 at 16-19. As the Court dismisses Brazil's petition on other grounds, it declines to reach these issues here.

### D. Brazil's Motions to Amend and Motion to Take Judicial Notice are Futile.

Brazil has also filed three motions after briefing concluded in this case seeking to amend his petition and seek that the Court take judicial notice of recent caselaw. *See* Docs. 16, 18, and 21, and 23. However, these motions largely reiterated his earlier arguments and none of the new arguments or caselaw in Brazil's motions impacts the Court's conclusion here.

In Brazil's July 25, 2018 Motion to Amend (Doc. 16), Brazil cites to *Tibbs*, 685 Fed. App'x 456 (6th Cir. 2017), arguing it provides support for his argument that M.C.L. § 333.7403 is indivisible. However, as explained *supra*, *Tibbs* reached the opposite conclusion.

In Brazil's September 20, 2018 Motion to Amend (Doc. 18), Brazil seeks to rely on the Seventh Circuit decision in *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018). Again, as discussed *supra*, even assuming Seventh Circuit law, and thus *Elder,* applies, the Court must dismiss Brazil's claim.

Next, in Brazil's October 4, 2018 Motion to Take Judicial Notice (Doc. 21), Brazil alerts this Court to the recent Ninth Circuit decision in *Lorenzo v. Sessions,* 902 F.3d 930 (9th Cir. 2018)*.* In *Lorenzo,* the Ninth Circuit held that a California statute was overbroad where it applied to optical and geometric isomers of methamphetamine, whereas the federal controlled substance act only applied to optical, and not geometric isomers. *Id.* at 934. Unlike the

California statute at issue in *Lorenzo,* however, the Michigan statute at issue here covers the same isomers of cocaine as the federal statute.

Finally, Brazil has filed another Motion to Amend (Doc. 23) based on *Caffie v. Krueger*, 2:1-cv-00487-WTL, Slip. Op. (S.D.Ind. Jan. 25, 2019). In this case, the petitioner argued that use of his prior conviction under Illinois law 720 ILCS 570(407)(b)(2) to enhance his sentence under 21 U.S.C. § 841(b)(A)(1) was improper because the state statute is broader than the definition for felony drug offense under 21 U.S.C. § 802(44). After Respondent conceded that the state statute was overbroad, the court granted petition. This case does not help Brazil. First, the Respondent has made no such concession here. Second, the respondent in *Caffie* conceded that 720 ILCS 570(407)(b)(2) was over broad because it included "positional" isomers in its definition of cocaine, whereas § 802(44) does not. Again, the Michigan statute at issue here covers the same isomers of cocaine as the federal statute.

Accordingly, Brazil's additional Motions (Docs. 16, 18, 21, and 23) are denied as futile.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Docs. 1 and 3) is DENIED. Petitioner's Motions to Supplement/Amend (Docs. 16, 18, 21, and 23) are DENIED as futile.

This matter is now terminated.

Signed on this 20th day of March, 2019.

*s/ Sara Darrow*
Sara Darrow
Chief United States District Judge